**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 26-1220**

―――――――――

DAN RIVER BASIN ASSOCIATION; SIERRA CLUB; APPALACHIAN VOICES; CENTER FOR BIOLOGICAL DIVERSITY; WILD VIRGINIA,

     Petitioners,

v.

VIRGINIA DEPARTMENT OF ENVIRONMENTAL QUALITY; MICHAEL ROLBAND, in his official capacity as Director of the Virginia Department of Environmental Quality; TRISHA BEASLEY, in her official capacity as the Director of Operations of the Virginia Department of Environmental Quality; BRYANT THOMAS, in his official capacity as Water Resources Division Director, Virginia Department of Environmental Quality,

     Respondents,

and

MOUNTAIN VALLEY PIPELINE, LLC; DUKE ENERGY CAROLINAS, LLC; DUKE ENERGY PROGRESS, LLC,

     Intervenors - Respondents.

―――――――――

On Petition for Review of a Decision of the Virginia Department of Environmental Quality. (VWP Individual Permit No. 25-0752)

―――――――――

Argued: April 28, 2026                     Decided: June 11, 2026

―――――――――

Before GREGORY, WYNN, and THACKER, Circuit Judges.

―――――――――

Motion for stay pending review denied by published opinion.  Judge Wynn wrote the opinion, in which Judge Gregory and Judge Thacker joined.

———————————

**ARGUED:**  Derek Owen Teaney, APPALACHIAN MOUNTAIN ADVOCATES, Lewisburg, West Virginia, for Petitioners.  Katherine Elizabeth Kulbok, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondents.  Jeremy C. Marwell, VINSON & ELKINS, LLP, Washington, D.C., for Intervenors.  **ON FILING:** Deborah M. Murray, Jonathan M. Gendzier, Grace L. Gibson, SOUTHERN ENVIRONMENTAL LAW CENTER, Charlottesville, Virginia; Benjamin A. Luckett, APPALACHIAN MOUNTAIN ADVOCATES, Lewisburg, West Virginia, for Petitioners. Jay Jones, Attorney General, Katherine E. Kulbok, Assistant Attorney General, Tillman J. Breckenridge, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Respondents.  Misha Tseytlin, Kevin M. LeRoy, Chicago, Illinois, Melinda L. McGrath, Anais M. Jaccard, TROUTMAN PEPPER LOCKE LLP, Charlotte, North Carolina, for Intervenors Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.  Nathan Campbell, VINSON & ELKINS LLP, Washington, D.C.; Justin W. Curtis, AQUALAW, PLC, Richmond, Virginia, for Intervenor Mountain Valley Pipeline, LLC.

———————————

2

WYNN, Circuit Judge:

This opinion pertains to the second of two motions for a stay pending review filed by the petitioners in a pair of cases involving environmental challenges to State-issued water quality certifications for the Southgate Project, a proposed pipeline that will traverse portions of North Carolina and Virginia.

Our opinion in the first matter issues simultaneously with this opinion and sets forth our reasoning for denying the motion for a stay pending review of the North Carolina water quality certification.[1] *See Sierra Club v. N.C. Dep't of Env't Quality*, No. 26-1044, slip op. (4th Cir. June 11, 2026). For essentially the same reasons, we deny the motion for a stay pending review of the water quality certification ("the Certification") issued by the Virginia Department of Environmental Quality ("VDEQ").[2]

As described in the opinion in the companion case, Mountain Valley Pipeline, LLC ("MVP"), initially filed an application related to the Southgate Project to the Federal Energy Regulatory Commission ("FERC") in 2018, and filed a revised application in February 2025. *See id.* at 4–5. It applied for a water quality certification from VDEQ in April 2025. VDEQ approved MVP's "Standards and Specifications" agreement ("S&S agreement") "for Erosion and Sediment Control . . . and Stormwater Management" on

---

[1] Two of the petitioners in this case overlap with those in the North Carolina case: Sierra Club and Appalachian Voices. The other petitioners in this case are the Dan River Basin Association, the Center for Biological Diversity, and Wild Virginia. As in the North Carolina case, Mountain Valley Pipeline LLC, Duke Energy Carolinas LLC, and Duke Energy Progress LLC intervened as respondents.

[2] More precisely, we issued the denial order on the stay motion on April 29, 2026, the day after we held oral argument. This opinion sets forth our reasons for rendering that decision.

August 1, 2025. Dkt. No. 23-9 at 78.[3] After receiving public comments during fall 2025, including from Petitioners, VDEQ approved the Certification on January 13, 2026. Petitioners sought review in this Court in February. On March 4, they moved for a stay of the Certification pending review in light of the impending commencement of construction. Dkt. No. 23; *see Sierra Club*, No. 26-1044, slip op. at 6.

We deny the stay motion for the same reason we deny the stay in the North Carolina case: Petitioners have not made a strong showing that they are likely to succeed on the merits.[4] *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

As in the North Carolina case, Petitioners argue that VDEQ's decision to issue the Certification was deficient for two reasons: First, VDEQ failed to rationally explain its prediction that the Southgate Project will not cause violations of water quality requirements, in light of MVP's history of noncompliance during construction of the

---

[3] In light of the preliminary posture of this case, the parties have not yet filed a Joint Appendix but have instead attached relevant documents as exhibits to their motion-related filings. For ease of reference, we cite the parties' filings using the docket number and the page number generated by our Case Management/Electronic Case Files system in red font at the top of the page.

[4] In conducting this analysis, "[w]e review Virginia's [water quality] Certification under the standards set forth in the" Administrative Procedure Act. *Appalachian Voices v. State Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019). To be sure, "[t]his Court has questioned whether State standards might be more appropriate for review of State agency actions." *Mountain Valley Pipeline, LLC v. N.C. Dep't of Env't Quality*, 990 F.3d 818, 826 n.5 (4th Cir. 2021) (citing *Appalachian Voices*, 912 F.3d at 753 n.1; *Sierra Club v. State Water Control Bd.*, 898 F.3d 383, 403 n.13 (4th Cir. 2018)). In prior cases, respondents have argued "that Virginia law should supply the standard" and that this "would require application of the substantial-evidence standard of review." *Sierra Club*, 898 F.3d at 403 n.13; *accord Appalachian Voices*, 912 F.3d at 753 n.1. But here, none of the motions-related filings dispute that the federal Administrative Procedure Act standard applies, so we leave that question for another day.

Mountain Valley Pipeline ("Main Pipeline"); and second, the "Certification unlawfully omits conditions that [VDEQ] itself determined were necessary to ensure compliance with water quality standards." Dkt. No. 23-1 at 12.

Petitioners' motion does not make a strong showing that they are likely to succeed on the merits of their argument that MVP's history of noncompliance renders VDEQ's decision to grant the Certification arbitrary and capricious. Certainly, MVP's past violations are more directly relevant here than in the North Carolina case, because MVP committed violations *within Virginia* during construction of the Main Pipeline. VDEQ thus has direct experience with MVP committing violations under its own enforcement regime. Additionally, the portion of the Southgate Project that will traverse Virginia (about 27 miles) is more than five times longer than the portion falling within North Carolina (about 5 miles)—though it is still substantially shorter than the segment of the Main Pipeline that crossed Virginia (over 100 miles). *See* Dkt. No. 23-2 at 4; *Sierra Club v. W. Va. Dep't of Env't Prot.*, 64 F.4th 487, 494 (4th Cir. 2023).

But while MVP's violation history is more relevant, and the Project more substantial, in Virginia than in North Carolina, VDEQ counteracted those elements by giving a much more detailed explanation for its prediction of future compliance than its counterpart in North Carolina did. *Compare* Dkt. No. 23-9 at 65–72, *with* Hearing Officer's Report and Recommendation at 8–9, *Sierra Club*, No. 26-1044, Dkt. No. 38-8.

VDEQ explained, among other things, that many of MVP's prior violations occurred due to "2018 precipitation levels that caused erosion and sedimentation issues" and that those precipitation levels "are not expected to repeat, but if they should, that

erosion would be limited" because the Southgate Project "traverses flatter terrain" than the Main Pipeline and MVP will "implement additional weather monitoring and other measures." Dkt. No. 23-9 at 66–67. Additionally, MVP "made continuous iterative improvements to its erosion and sediment control and stormwater management practices over the course of the nearly six-year period of construction" of the Main Pipeline, which "are generally incorporated in the approved S&S" agreement. *Id.* at 67. VDEQ noted that it planned to include conditions in the Certification requiring MVP "to reimburse [VDEQ] for the costs of hiring third-party inspection services to provide daily inspection activities along the construction right-of-way" and "to fund continuous monitoring by the U.S. Geological Survey" ("USGS") "at specified stream crossings." *Id.*; *see also* Dkt. No. 23-2 at 15 (Certification's inspection and monitoring conditions). And VDEQ explained that the Southgate Project "is a smaller diameter pipe installed through less challenging terrain over less distance" than the Main Pipeline, so "it is reasonable for [VDEQ] to assume" that MVP's practices—which will incorporate the improvements it made "over the course of construction" of the Main Pipeline—"will produce better outcomes." Dkt. No. 23-9 at 67.

Petitioners' motion to stay contends that this explanation was arbitrary and capricious because it "downplayed MVP's history of violating" erosion and sediment requirements. Dkt. No. 23-1 at 17. Petitioners ignore VDEQ's lengthy explanation of the differences it saw between the Southgate Project and the Main Pipeline—differences that, based on our preliminary review, appear to provide a rational explanation for VDEQ's prediction of a different outcome here. Petitioners therefore have not satisfied their burden at this stage of the proceedings.

6

Petitioners also criticize VDEQ's reliance on a report prepared by Geosyntec. They overstate that reliance. VDEQ cited the Geosyntec report in passing in its twelve-page response to comments about MVP's alleged past failure to "avoid and minimize impacts to state waters." Dkt. No. 23-9 at 51. Specifically, VDEQ described "two critical studies [that] were conducted with the express purpose of answering whether pipeline construction impacted water quality"—one by USGS and one by Virginia Commonwealth University ("VCU")—and then concluded that "[t]he comprehensive, multi-year monitoring and assessment efforts conducted by the USGS/DEQ and VCU/DEQ—*as well as the supplemental data provided by MVP . . . in the report prepared by Geosyntec*—provide a thorough evaluation of the environmental impacts of the" Main Pipeline's "stream crossings in southwestern Virginia." *Id.* at 62 (emphasis added). In other words, VDEQ relied most heavily on the "critical" studies conducted by USGS and VCU and simply noted the Geosyntec report as providing "supplemental data."

Petitioners cite one statement in the lengthy Geosyntec report as flawed and argue that this error renders VDEQ's entire prediction of future compliance arbitrary and capricious. But they do not explain how the deferential arbitrary-and-capricious standard calls for flyspecking every line of a report that the agency relied upon only tangentially.

And in any event, even assuming we may engage in the line-by-line review Petitioners seek here, we are not convinced. Petitioners argue that a particular score for one of eight streams studied by Geosyntec, Teels Creek, moved from above to below West Virginia's impairment threshold after construction of the Main Pipeline, but that Geosyntec failed to appreciate that fact. But VDEQ itself had already recognized in its December 23,

2025, response to comments that Teels Creek had experienced a substantial drop in quality after Main Pipeline construction. While it did not explicitly take into account the fact that the score fell below West Virginia's impairment threshold—perhaps because Virginia uses a different scoring system with a different threshold—VDEQ did not ignore Teels Creek's substantial drop in water quality. To the contrary, it explained why it did not find that evidence dispositive.

So we do not think that Petitioners have made a strong showing that they are likely to succeed on their argument related to VDEQ's prediction of future compliance.

The other merits argument that Petitioners put forward in their stay motion is that although VDEQ "recognizes that state erosion and sediment control requirements, including MVP's Erosion and Sediment Control and Stormwater Management plans" and S&S agreement, "are critical to protecting water quality, nothing in the . . . Certification requires MVP to comply with any of those requirements." Dkt. No. 23-1 at 10. They argue that this failure to include critical conditions rendered the Certification decision arbitrary and capricious.

But the Certification includes a condition that MVP "shall conduct authorized activities as described in the Joint Permit Application dated April 2025, received 18 April 2025, and additional information materials received through 2 October 2025." Dkt. No. 23-2 at 7. That condition thus explicitly incorporates by reference the April 2025 application, which states that in Virginia, Southgate Project construction "must comply with" MVP's S&S agreement, "site-specific [Erosion and Sediment Control Plans], and site-specific post-construction stormwater management plans approved in accordance with [VDEQ]'s

regulations." Dkt. No. 41-6 at 66. And it explicitly incorporates by reference the S&S agreement, which was adopted on August 1, 2025, and therefore constituted additional material received through October 2.[5] VDEQ and MVP have repeatedly and explicitly represented that MVP is bound by these commitments. *See* Dkt. No. 29-1 at 20–21 (MVP); Dkt. No. 40-1 at 17–19 (VDEQ); Dkt. No. 41-1 at 16–19 (MVP); Oral Arg. at 19:36–21:46, https://www.ca4.uscourts.gov/OAarchive/mp3/26-1220-20260428.mp3 (VDEQ); *id.* at 27:47–28:50 (MVP); *cf. Sierra Club*, No. 26-1044, slip op. at 16.

We therefore conclude that Petitioners have not made a strong showing of a likelihood of success on the merits of either of their arguments. And, as in the North Carolina case, we conclude that even though the remaining stay factors tilt modestly in Petitioners' favor, those other factors do not outweigh this shortcoming. *Sierra Club*, No. 26-1044, slip op. at 8. Accordingly, we deny the motion for a stay pending review.

*MOTION FOR STAY DENIED*

---

[5] VDEQ and the intervenors argue that Petitioners waived or forfeited their conditions-related argument by failing to raise it during the administrative proceedings. Because we conclude that Petitioners have not made a strong showing of a likelihood of success on the merits even if we consider the argument, we do not address issues of waiver or forfeiture in this preliminary posture.

Similarly, for the first time in their motion reply, Petitioners question whether the incorporation condition is valid. While they can air out that argument more fully in merits briefing, by raising it for the first time in reply, they have not properly put it before us for purposes of their stay motion.

9